(C. D. 763)

WILLIAM COOPER & NEPHEWS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 3, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector* and *Dorothy C. Bennett,* special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: The merchandise in this case was imported at the port of Chicago and is described on the invoice as "30 Casks Contg 5040 lbs. DERRIS RESIN MIXED WITH INERT POWDER (10% Derris Resin, 90% Inert Powder)." It appears from a red-ink notation on the invoice that the appraiser advisorily classified the merchandise as a chemical compound. The collector assessed duty thereon at the

rate of 25 per centum ad valorem under paragraph 5 of the Tariff Act
of 1930 (19 U. S. C. 1940 ed. § 1001, par. 5), which reads as follows:

All chemical elements, all chemical salts, and compounds, all medicinal prepa-
rations, and all combinations and mixtures of any of the foregoing, all the foregoing
obtained naturally or artifically and not specially provided for, 25 per centum ad
valorem.

It will be observed that the same rate and the same paragraph apply
whether the merchandise is classified as a chemical compound or a
medicinal preparation. It does not appear from the official papers,
however, whether the collector adopted the advisory return of the
appraiser, or classified the merchandise as a medicinal preparation.

Plaintiff claims that the merchandise is free of duty, either as a
natural resin, not specially provided for, under paragraph 1686, or
as a crude drug under paragraph 1669; or, dutiable at 10 per centum
under paragraph 34 as a drug advanced in value or condition, or at
20 per centum under paragraph 1558, as a nonenumerated manufac-
tured article. The claim under paragraph 34 is pressed more vigor-
ously than the others, but this opinion discusses each claim.

It is conceded by plaintiff's attorneys in their supplemental brief
(page 17) that the merchandise in question is identical with that which
was before the court in *United States* v. *Wm. Cooper & Nephews, Inc.*,
22 C. C. P. A. 31, T. D. 47038, and therefore the judgment in that case
becomes vitally important and will be discussed hereinafter at some
length.

Analysis of the merchandise in question revealed that it consists of
12 per centum derris resin and 88 per centum clay, the latter an inert
substance used as a distributing or diluting agent and to "prevent the
resin, itself, from massing together." Derris resin is a material ex-
tracted from the natural root of the derris plant with solvents that
are later removed. The term "resin" implies numerous constituents,
and, quoting plaintiff's witness, Chewening, derris resin "is a composi-
tion of numerous chemical compounds." After the solvents referred
to are removed, the residue is dried and ground into powder. It is
combined with clay, forming the imported merchandise.

The imported product, which was purchased by the plaintiff-corpo-
ration in England where it was specially prepared for them, is never
sold in its imported condition. The derris resin is always diluted,
either by adding more clay or introducing other substances, to bring
it to strength regarded as commercially safe as an ingredient in animal
insecticides, for which it is chiefly used. It is also employed, to some
extent, as an antiparasitic on humans and in horticultural work as an
insecticide, but such uses are incidental or occasional. In commercial
products, including dog flea powder and dog mange powder, wherein
the imported commodity is used, derris resin constitutes about 3 per
centum of the whole and is largely, if not entirely, the active ingredient

therein. Its value lies in its therapeutic properties that mitigate or exterminate bodily diseases and which plaintiff described as follows:

In the destruction of fleas on animals and humans, it destroys the piece, which were it allowed to continue, would create sores, and in the case of susceptible humans, there would be considerable nervous effect on the nervous system, and so I feel very definitely there is therapeutic action in that these pieces are destroyed, and the continuing effect of prevention, and that will follow in the case of lice, and in the case of fleas there is this tape worm embryo, as I mentioned before, which develops in the dog after the flea has been swallowed, and then by reverse action, in the event that the flea is destroyed you prevent the attack of tape worm.

While there is some doubt expressed as to whether the derris resin would cure sores, it is conceded that it will prevent the "continuation or aggravation" of such condition.

In the *Wm. Cooper & Nephews, Inc.*, case, *supra*, which, as heretofore stated, involved identical merchandise, the only question presented was whether the product was dutiable as a medicinal preparation under paragraph 5, *supra*, as assessed by the collector, or free of duty as a natural resin, not specially provided for, which is one of the claims alleged herein. The court invoked the well-known tariff principle that a classification controlled by use prevails over an *eo nomine* designation, and accordingly upheld the collector's classification that the merchandise was a medicinal preparation.

The record before us contains nothing to disturb the decision in the cited case. On the contrary, it fully supports the court's conclusion therein. The uncontradicted testimony on use of the merchandise in question clearly establishes its classification as a medicinal preparation. Hence, the rule applied in the *Wm. Cooper & Nephews, Inc.*, case, *supra*, has the same force and effect here.

It cannot be overlooked that in the first case, involving like merchandise, a definite set of facts supported a classification under paragraph 5, *supra*, as a medicinal preparation. The factual basis therein was supplied exclusively by the witness Timson, president of the plaintiff corporation. With the issue clearly drawn in that case between paragraph 5 and paragraph 1686, the Court of Customs and Patent Appeals not only decided that the protest therein should be overruled, thereby denying the classification sought under paragraph 1686, but sustained the collector's classification of medicinal preparations under said paragraph 5. We feel it is fair to assume that if there had been any doubt upon the record in that case that the merchandise there, which is identical with the merchandise here, should not have been classified under paragraph 5, *supra*, as a medicinal preparation, then action similar to that taken in *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 318, T. D. 41915, would have been followed. In that case, the appellate court decided that the merchandise was incorrectly classified by the collector, but as the importers had confined

their protest claim to a paragraph which did not apply, the court was unable to do more than reverse the judgment, without affirming the decision of the collector. The court, however, went further and suggested that the goods might be more properly classifiable under some other paragraph not presented in the record. Clearly, if such procedure had been followed by the appellate court in the *Wm. Cooper & Nephews, Inc.*, case, *supra*,—that is declaring merchandise identical with that now before the court as improperly classified by the collector and not belonging under the classification urged by the importer, but from the evidence before the court properly dutiable under another paragraph (34) if you please—such finding would have justified litigation upon a similar set of facts. But that was not done.

In the case now before us, we have not only the same party plaintiff, identical merchandise, and the only testimony of material consequence supplied by the same witness, Timson, as in the *Wm. Cooper & Nephews, Inc.*, case, *supra*, but there is nothing of worth-while consideration supplied in the record herein which, in our opinion, would have done other than persuaded the Court of Customs and Patent Appeals in the first case that their finding was all the more proper. Under all of these circumstances, to not rely upon the previous case would be little less than asking the appellate court to reverse its decision therein, and that we are unwilling to do.

We discuss the other claims in the protest, although obviously arriving at no other conclusion than that stated heretofore.

The claim that the merchandise is properly classifiable as a non-enumerated manufactured article is wholly untenable. There is not a scintilla of evidence in the case to support this contention. Such claim is therefore overruled.

The case of *Lehn & Fink* v. *United States*, 4 Ct. Cust. Appls. 325, T. D. 33522, is decisive of the issue arising under the claim that the present merchandise is properly classifiable as a drug. That case involved merchandise described by the courts as sirup of rhamnus, obtained by "expressing the fresh, ripe berries of the plant commonly known as buckthorn and mixing with the juice thus produced a certain percentage of sugar"; extract of gentian, "a dry powder, made 'by extracting the gentian root with water and evaporating the solution to dryness and powdering it' "; and extract of taraxacum, "a dry powder obtained by evaporating the juices expressed from the fresh roots of the plant commonly called dandelion." The articles were assessed as medicinal preparations, and claimed to be classifiable as drugs. Although the case arose under the Tariff Act of 1909, the language of the drug paragraph (20), so far as material for the purposes of this case, was identical with the present act (paragraphs 1669 and 34), reading as follows:

\* \* \* PAR. 20. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, \*. \* \*, roots, stems, \* \* \*

vegetables, seeds (aromatic, not garden seeds), * * *: any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for * * *.

In excluding the merchandise from the above provisions, the court limited the scope of the paragraph, using the following language:

* * *. In our opinion, paragraph 20 is limited by its terms to such natural uncompounded drugs as inedible barks, beans, berries, roots, and so forth, and does not extend to infusions, decoctions, or extracts made from such substances. * * *. Paragraph 20 does provide for certain enumerated drugs "advanced in value or condition by any process or treatment whatever." Nevertheless the limitation of the paragraph to natural drugs makes it clear, we think, that there was no intention to extend its provisions to drugs artificially produced or to manufactures of such natural drugs. * * *.

The goods in controversy are, in our opinion, not natural drugs, such as those enumerated in paragraph 20, but medicines artificially produced and ready for use. They are therefore medicinal preparations within the intention of paragraph 65 and dutiable as assessed.

The similarity, in character and use of the merchandise under consideration, with the products before the court in the *Lehn & Fink* case, *supra*, renders applicable here the construction employed there, and we hold therefore that the present merchandise is not properly classifiable as a drug, either crude or advanced in value or condition, as claimed.

The instant case is distinguishable from *United States* v. *Nagase et al.*, 11 Ct. Cust. Appls. 144, T. D. 38939, cited by plaintiff to support its contention. There, the merchandise was in fact a drug *per se*, consisting of the ground dried flowers of the wild camomile plant, known also as pyrethrum. Here, we are concerned with a resinous material extracted from the natural derris plant, not a drug within the limitation placed on the provisions therefor in the *Lehn & Fink* case, *supra*.

For reasons hereinabove set forth, we hold the merchandise to be properly classifiable as a medicinal preparation under paragraph 5, *supra*, dutiable at the rate assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.